UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

BRYAN MARSHALL WEST,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

Case No. 1:23-cv-436

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 9.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 7.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections (MDOC), Becher, Rewerts, and MDOC Director. Plaintiff's claim against Defendant Gibson will be transferred to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1406(a). Plaintiff's claims against Corizon Health will not be addressed on screening, and this case shall be administratively closed with respect to such claims until Plaintiff files a motion to reopen this matter upon termination of the bankruptcy proceedings regarding Corizon Health or the lifting of the automatic bankruptcy stay. Plaintiff's motion for a preliminary injunction (ECF No. 3) will be denied without prejudice.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

### I. Factual Allegations

Plaintiff is presently incarcerated with the MDOC at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility, the Parnall Correctional Facility (SMT) in Jackson, Jackson County, Michigan, and the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues the MDOC itself, the MDOC Director, Corizon Health, DRF Warden Unknown Rewerts, DRF Grievance Coordinator L. Becher, and SMT Registered Nurse Tammie Gibson.

Plaintiff alleges that he suffers from "severe neurological problems and was seen by a neurologist regularly" prior to his incarceration. (ECF No. 1, PageID.4.) Plaintiff began his term of incarceration in 2019. (*Id.*) At that time, he requested help for his chronic neurological issues, including "total loss of motor skills that includes walking and talking problems as well as double vision." (*Id.*) Plaintiff was transferred to MBP on June 5, 2019, where he again requested neurological testing. (*Id.*) Plaintiff requested testing because he was experiencing issues with equilibrium, nerve issues, and nausea for migraines. (*Id.*) Plaintiff subsequently requested renewal of his bottom bunk detail "after having come close several times from falling off the top." (*Id.*, PageID.5.) Plaintiff claims it took "several months for this request to be renewed." (*Id.*)

Plaintiff alleges that, per MDOC policy, inmates are not permitted to purchase transitional prescription glasses. (*Id.*) Plaintiff was used to having such glasses because of "extreme issues with the sun aggravating his neurological condition and chronic migraines." (*Id.*) On September 1, 2019, Plaintiff requested that the optometrist order solar shield glasses that would fit around Plaintiff's regular prescription glasses. (*Id.*) On October 20, 2019, Plaintiff submitted a request to be seen for loss of vision. (*Id.*) He was told he was scheduled for an appointment, but "[n]o help was received." (*Id.*) Plaintiff later was told that he needed to submit his request for solar shields to

healthcare. (*Id.*) He submitted that request on March 13, 2020, but was told the request needed to go to the optometrist. (*Id.*) Plaintiff made another request for solar shields on March 19, 2020; he was told that "a chart review was scheduled with the optometrist." (*Id.*)

Plaintiff made another request for solar shields on April 13, 2020, "after having suffered for several months from having no protection from the sun." (*Id.*) Healthcare told him he was scheduled to be seen. (*Id.*) On June 5, 2020, Plaintiff submitted yet another request for solar shields. (*Id.*, PageID.6.) He was told he was scheduled for an appointment. (*Id.*) On September 1, 2020, Plaintiff submitted another request. (*Id.*) He claims he has "yet to receive [the solar shields] several years later." (*Id.*)

On October 16, 2020, Plaintiff asked that his bottom bunk detail be renewed. (*Id.*) Plaintiff "was told that he did not qualify for one, despite his health and having already been approved for one before." (*Id.*) Plaintiff's second request for such a detail, submitted on October 20, 2020, was also denied. (*Id.*)

On January 28, 2021, Plaintiff submitted another bottom bunk detail request. (*Id.*) He was "told that healthcare had no record of him ever having had a bottom bunk detail." (*Id.*) Healthcare also told Plaintiff "that they had no record of any documented neurological issues, despite them being documented all the way from the start of incarceration." (*Id.*) Plaintiff submitted another request for a bottom bunk detail on February 5, 2021, "having already fallen from the top bunk a few times by this point." (*Id.*) Plaintiff alleges that he had submitted numerous grievances by this point as well. (*Id.*)

Plaintiff was subsequently transferred to SMT. On June 6, 2021, he asked for a follow-up appointment because on June 4, 2021, he had been taken from his work assignment in a wheelchair

"due to the inability to walk." (*Id.*) Plaintiff also asked to be taken to see a neurologist. (*Id.*) He "was told that the provider had put a plan of care in place." (*Id.*)

On June 29, 2021, Plaintiff was again taken from his work assignment by wheelchair "due to the inability to walk or talk." (*Id.*, PageID.7.) He saw Defendant Gibson, who wrote "a request to the provider within the consent of the Plaintiff." (*Id.*) Plaintiff alleges that Defendant Gibson did not provide any treatment, and that he was wheeled back to his unit "in extreme pain." (*Id.*)

Plaintiff experienced the same issues on June 30, 2021, and was again wheeled to healthcare, where he saw Defendant Gibson. (*Id.*) Plaintiff did not receive any treatment. (*Id.*) He submitted a grievance. (*Id.*)

On July 1, 2021, Plaintiff submitted another healthcare request, "stating that his neurological health, including chronic migraines, was getting worse." (*Id.*) He was told that he was scheduled to see a medical provider. (*Id.*) Plaintiff alleges "[n]othing ever happened." (*Id.*)

Plaintiff was wheeled to medical again on July 7, 2021. (*Id.*) Defendant Gibson "saw him again and sent him on his way in extreme pain." (*Id.*)

On July 21, 2021, Plaintiff requested that he receive an MRI scan. (*Id.*) One was scheduled because of "the increase and severity of episodes." (*Id.*) Plaintiff received the MRI at a hospital in Jackson, Michigan, on September 3, 2021. (*Id.*) However, "nothing happened. No follow up was ever made to discuss the findings of the MRI." (*Id.*)

Plaintiff was transferred to DRF at some point before June 24, 2022. (*Id.*) Upon his arrival there, he requested help and was told that he was "scheduled to see a neurologist in the near future." (*Id.*) On August 25, 2022, Plaintiff submitted another request for help. (*Id.*, PageID.8.) He alleges that by this point, "his neurological damage had progressed to the point of having painful episodes every couple of hours." (*Id.*) Plaintiff was told that a "neurology consult had been scheduled." (*Id.*)

6

On September 29, 2022, "Plaintiff collapsed at work and was wheeled to medical, where nothing happened." (*Id.*) Another inmate wheeled Plaintiff back to his housing unit because Plaintiff was unable to walk. (*Id.*)

Plaintiff alleges that between June 30, 2022, and October 12, 2022, he submitted four grievances regarding his health, and "all four were rejected by [Defendant] Becher, [Defendant] Rewerts, and the MDOC Director." (*Id.*) On October 4, 2022, Plaintiff submitted a request to medical, but he was never seen. (*Id.*) Plaintiff "was again told that he was scheduled for a neurology consult." (*Id.*) Plaintiff submitted another grievance on November 18, 2022; it was "rejected by everyone." (*Id.*)

On February 8, 2023, Plaintiff "made a plea for help to healthcare, expressing the severe pain that he suffers from on a daily basis. He was again told that he had an appointment scheduled." (*Id.*) On February 12, 2023, Plaintiff asked for his pain medications, including Excedrin and Naproxen, to be renewed. (*Id.*) Plaintiff claims that "[t]hey took everything from him, didn't renew them, and replaced them with nothing but Tylenol, which has done nothing." (*Id.*)

On March 7, 2023, Plaintiff "fell out in the kitchen while eating and had to be helped back to his unit by two fellow inmates." (*Id.*) He submitted a healthcare request the next day and was "told that he is scheduled for an upcoming appointment." (*Id.*)

On April 2, 2023, Plaintiff requested medical testing "due to the severe increase in episodes. He received the same generic reply that an appointment has been scheduled." (*Id.*, PageID.9.)

Plaintiff alleges that he has seen "his neurological health severely decrease since first becoming incarcerated." (*Id.*) He states that because of his restricted mobility, he is "forced to forego some meals at the chow hall and other daily activities." (*Id.*) Plaintiff alleges that he is

unable to "enjoy the simple things in life," such as going outside, exercise, sitting up in bed, and walking to the bathroom "without assistance." (*Id.*) The decline in his physical health has caused Plaintiff to suffer depression. (*Id.*)

Based upon the foregoing, Plaintiff asserts Eighth Amendment claims against all Defendants, claiming that they have demonstrated deliberate indifference to Plaintiff's medical needs. (*Id.*, PageID.10.) Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*) Plaintiff has also filed a motion for a preliminary injunction, asking to be sent to a neurologist. (ECF No. 3.)

## II.     Motion for a Preliminary Injunction

When Plaintiff filed his complaint, he also filed a motion for a preliminary injunction. (ECF No. 3.) Preliminary injunctions and temporary restraining orders are some of "the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (citation omitted). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met.").

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his § 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. Although the Court makes no final determination on this issue, it is not at all clear from Plaintiff's *pro se* complaint that Plaintiff has a substantial likelihood of success on his claims. Accordingly, Plaintiff's motion for a preliminary injunction (ECF No. 3) will be denied without prejudice.

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

9

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Claims Against the MDOC

Plaintiff has named the MDOC itself as a Defendant in this action. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Therefore, Plaintiff's claim against the MDOC is properly dismissed on grounds of immunity. In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983

for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff's claim against the MDOC also is properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b), and 42 U.S.C. § 1997e(c).

### B. Claims Against Gibson, Becher, Rewerts, and MDOC Director

Plaintiff contends that Defendants Gibson, Becher, Rewerts, and the MDOC Director violated his Eighth Amendment rights by demonstrating deliberate indifference to his medical needs. In keeping with the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment, U.S. Const. amend. VIII, the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v.*

11

*Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted). "[I]f a plaintiff suffered from a minor or non-obvious medical condition, he can show that his condition was objectively serious 'if it is one that has been diagnosed by a physician as mandating treatment.'" *Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017) (quoting *Blackmore*, 390 F.3d at 897).

The subjective component of the Eighth Amendment's deliberate indifference standard requires an inmate to plead facts that would demonstrate that that the prison official had "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with

knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted).

### 1. Objective Component

Throughout his complaint, Plaintiff alleges that he has suffered from neurological issues since before his incarceration, and that his issues have gotten worse during his incarceration. As discussed above, Plaintiff contends that he suffers from chronic migraines, loss of vision, and difficulty walking. He has set forth facts suggesting that on numerous occasions, he has been taken to the medical department via wheelchair because he was suddenly unable to walk. Given Plaintiff's allegations, the Court concludes that he has sufficiently alleged that he suffers from serious medical needs for purposes of his Eighth Amendment claims. *See, e.g.*, *Brock v. Wright,* 315 F.3d 158, 163 (2d Cir. 2003) (concluding that deliberate indifference to chronic pain violated

13

the Constitution); *Harrison v. Barkley,* 219 F.3d 132, 136–37 (2d Cir. 2000) (finding that deliberate indifference to degenerative condition violated the Constitution); *Morrison v. Mamis*, No. 08 CIV 4302 PAC AJP, 2008 WL 5451639, at *8 (S.D.N.Y. Dec. 18, 2008), *report and recommendation adopted*, 2009 WL 2168845 (S.D.N.Y. July 20, 2009) (collecting cases and holding that "[d]epending upon the circumstances, . . . migraine headaches may qualify as 'serious medical needs' under the Eighth Amendment).

### 2.     Subjective Component—Defendant Gibson

In his complaint, Plaintiff alleges that during his incarceration at SMT, he was wheeled to the healthcare department on four separate occasions because he was unable to walk. (ECF No. 1, PageID.6–7.) On three of these occasions, Plaintiff saw Defendant Gibson. (*Id.*, PageID.7.) Plaintiff claims that Defendant Gibson did not provide any treatment on any of these occasions and sent Plaintiff on his way "in extreme pain." (*Id.*) Plaintiff alleges further that at no time did he see a medical provider regarding these episodes. (*Id.*) Although Plaintiff has by no means proven deliberate indifference at this time, taking the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has sufficiently alleged that Defendant Gibson was aware of a substantial risk of harm to Plaintiff and disregarded that risk. Thus, Plaintiff has set forth an Eighth Amendment claim against Defendant Gibson premised upon her alleged deliberate indifference to Plaintiff's medical needs.

Although Plaintiff has set forth a plausible Eighth Amendment claim against Defendant Gibson, the Court notes that under the revised venue statute, venue in federal question cases lies in the district in which any defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred. *See* 28 U.S.C. § 1391(b). As discussed *supra*, Plaintiff's claims against the MDOC will be dismissed. Likewise, as discussed *infra*, Plaintiff's claims against Defendants Becher, Rewerts, and MDOC Director will be dismissed, and his claims

against Corizon Health will be stayed pursuant to the automatic stay provision of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 *et seq.* Thus, Plaintiff's remaining active claim involves events that occurred during his incarceration at SMT, which is located in Jackson County. Moreover, Defendant Gibson is a public official serving in Jackson County, and she "resides" in that county for purposes of venue over a suit challenging official acts. *See Butterworth v. Hill*, 114 U.S. 128, 132 (1885); *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972). Jackson County is within the geographical boundaries of the Eastern District of Michigan. *See* 28 U.S.C. § 102(a). The Court, therefore, finds that the interests of justice would be served by transferring Plaintiff's claim against Defendant Gibson to the United States District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. § 1406(a).

### 3. Subjective Component—Defendants Becher, Rewerts, and MDOC Director

Plaintiff's sole allegation regarding Defendants Becher, Rewerts, and the MDOC Director are that they denied Plaintiff's grievances concerning his healthcare. (ECF No. 1, PageID.8.) However, administrative or custody officials, such as Defendants Becher, Rewerts, and the MDOC Director, who have no training or authority to supervise healthcare officials typically cannot be held liable for the healthcare officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (concluding that a custody officer was entitled to rely on the medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) (noting that "if a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for

15

overseeing and second-guessing care given by medical officials). Moreover, non-medically trained prison officials are not deliberately indifferent when they defer to a "medical recommendation that he [or she] reasonably believes to be appropriate, even if in retrospect that recommendation was inappropriate." *McGaw v. Sevier Cnty.*, 715 F. App'x 495, 498 (6th Cir. 2017); *see also Stojcevski v. Macomb Cnty.*, 827 F. App'x 515, 522 (6th Cir. 2020) ("[A]n officer who seeks out the opinion of a doctor is generally entitled to rely on a reasonably specific medical opinion for a reasonable period of time after it is issued, absent circumstances such as the onset of new and alarming symptoms." (quoting *Barberick v. Hilmer*, 727 F. App'x 160, 163–64 (6th Cir. 2018) (per curiam))). Defendants Becher, Rewerts, and the MDOC Director cannot be considered deliberately indifferent by deferring to any treatment provided by the healthcare department.

Plaintiff's complaint is devoid of facts from which the Court could infer that Defendants Becher, Rewerts, and the MDOC Director were subjectively aware of any substantial risk of harm to Plaintiff and ignored that risk. Moreover, to the extent Plaintiff seeks to hold Defendants Becher, Rewerts, and the MDOC Director liable because of their respective supervisory positions, the Court notes that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act

based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege that Defendants Becher, Rewerts, and the MDOC Director encouraged or condoned the conduct of any healthcare officials, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff's only allegation is that they denied his grievances, which, as noted above, is insufficient to impose § 1983 liability. *See Shehee*, 199 F.3d at 300. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Becher, Rewerts, and the MDOC Director were personally involved in the events described in Plaintiff's complaint. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims against Defendants Defendants Becher, Rewerts, and the MDOC Director.

### C. Claims Against Corizon Health

As noted above, Plaintiff has named Corizon Health, the company that contracted to provide healthcare services for the MDOC during the relevant time, as a Defendant. The Court notes that Tehum Care Services, Inc., d/b/a Corizon Health, Inc., has filed a petition in bankruptcy, and an automatic stay has been entered in accordance with the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 *et seq. See In re Tehum Care Services, Inc.*, Case No. 23-90086 (Bankr. S.D. Tex.). Accordingly, Plaintiff's claims against Corizon Health are automatically stayed as to the debtor until the bankruptcy proceedings in question are terminated or the stay is lifted. *See* 11 U.S.C. § 362(c).

The automatic stay provision of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 *et seq.* halts the commencement or continuation of litigation against the debtor by adverse parties; it does not divest this Court of jurisdiction to issue necessary orders in civil actions that are stayed in bankruptcy. *See Cornell v. Walker*, 291 U.S. 1 (1934); *Donald F. Duncan Inc. v. Royal Tops Mfg. Co.*, 381 F.2d 879 (7th Cir. 1967), *cert. denied*, 390 U.S. 905 (1968). As discussed above, the Court has dismissed Plaintiff's claims against Defendants MDOC, Becher, Rewerts, and MDOC Director, and Plaintiff's claims against Defendant Gibson will be transferred to the United States District Court for the Eastern District of Michigan. Therefore, in light of the bankruptcy stay, the Court will not address Plaintiff's claims against Corizon Health on screening. Instead, this case shall be administratively closed with respect to such claims until Plaintiff files a motion to reopen this matter upon termination of the bankruptcy proceedings or the lifting of the automatic bankruptcy stay.

### Conclusion

For the reasons set forth above, Plaintiff's motion for a preliminary injunction (ECF No. 3) will be denied without prejudice. Moreover, having conducted the review required by the Prison

Litigation Reform Act, the Court determines that Defendants MDOC, Becher, Rewerts, and MDOC Director will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claim against Defendant Gibson will be transferred to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1406(a). Finally, Plaintiff's claims against Corizon Health will not be addressed on screening, and this case shall be administratively closed with respect to such claims until Plaintiff files a motion to reopen this matter upon termination of the bankruptcy proceedings regarding Corizon Health or the lifting of the automatic bankruptcy stay.

An order consistent with this opinion will be entered.


Dated:  May 31, 2023                             /s/ Ray Kent
                                                 Ray Kent
                                                 United States Magistrate Judge